UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| CHRISTOPHER CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-3-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| GUARDIAN LIFE INSURANCE | ) | **ORDER** |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

"Statement of ERISA Rights" is the heading on page seventy-five of the insurance policy at issue in this case.  R. 1, Attach. 2 at 80.  This is one of many pieces of evidence demonstrating that the policy is an employee benefits plan governed by ERISA.  And because ERISA preempts "virtually all state law claims relating to an employee benefit plan," this Court has federal question jurisdiction over the plaintiff's state-law complaint. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).

## BACKGROUND

Music-Carter, Inc., is a thirty-four-employee car dealership in Prestonsburg, Kentucky.  R. 1, Attach. 1 at 5.  After negotiating the proper "benefit levels," Music-Carter purchased a Guardian life and disability insurance policy from a "multiple employer welfare arrangement" trust fund.  *Id.* at 4.  The policy covered Christopher Carter, Music-Carter's co-owner and general manager.  *Id.* at 5.  And so he looked to the policy for benefits when he allegedly became disabled in 2008.  *Id.* at 5-6.  But Guardian denied Carter's application.  *Id.* at 6.  Carter sued Guardian in state court, asserting several state-law claims.  *Id.* at 10-12.

Guardian removed, but Carter filed a motion to remand on the theory that this Court lacks both federal-question and diversity jurisdiction.

## DISCUSSION

This Court has federal-question jurisdiction over this case because Guardian's policy is covered by ERISA, a federal statute which broadly preempts state-law claims "relating to" covered benefits plans. *Cromwell*, 944 F.2d at 1276 (6th Cir. 1991). That is, the policy meets all three of the Sixth Circuit's criteria for deciding that a plan is an ERISA plan: (1) It is not exempted from ERISA coverage under the Labor Department's "safe-harbor" regulations, 29 C.F.R. § 2510.3-1(j); (2) The "surrounding circumstances" indicate an ERISA plan exists; and (3) Music-Carter established or maintained this plan with the "intent of providing benefits to its employees." *See Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434-35 (6th Cir. 1996).

(1) The Labor Department's regulations exclude some insurance policies from ERISA if they meet *each* of four criteria. *Am. Home Assurance Co.*, 95 F.3d at 435. Those four criteria are (a) that "the employer makes no contribution to the policy"; (b) that "employee participation in the policy is completely voluntary"; (c) that "the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums . . . and remit them to the insurer"; and (d) that "the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services." *Id.* at 435.

Guardian's plan does not meet at least two of these. Contrary to the second criterion, participation in Guardian's plan was not "completely voluntary." Courts have held that

employees' participation is not "completely voluntary" if their enrollment in the plan is "automatic." *Int'l Res., Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 298 (6th Cir. 1991) (holding that regulatory exception did not apply partly because coverage was "automatic and applied to all employees"); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d, 489, 492 (9th Cir. 1988) (per curiam) (contrasting "voluntary" participation with "automatic" participation); *Thompson v. Unum Life. Ins. Co. of Am.*, No. 03-277, 2005 WL 722717, at *6 (N.D. Tex. Mar. 29, 2005). Here, as Carter does not dispute, participation in the plan was indeed automatic. R. 14 at 4 (noting that employees are enrolled in the plan simply because they are employees).

And contrary to the third criterion's requirement that an employer limit its involvement to simply publicizing a plan and taking payroll deductions for a benefits plan to escape ERISA, Music-Carter was sufficiently involved so as to "endorse[]" the plan. *Arbor Health Care Co. v. Sutphren Corp.*, No. 98-3497, 1999 WL 282667, at *4 (6th Cir. April 30, 1999); *Am. Home Assurance*, 95 F.3d at 436-37. Indeed, the plaintiff's own complaint acknowledges that Music-Carter negotiated benefit levels under the policy. R. 1, Attach. 1 at 5; *see also Am. Home Assurance Co.*, 95 F.3d at 436 ("For example, where the employer plays an active role in . . . negotiating the terms of the policy or the benefits provided thereunder, the extent of employer involvement is inconsistent with 'employer neutrality' and a finding of endorsement may be appropriate."). What's more, Music-Carter apparently paid premiums for its employees. R. 14, Attach. 2 at 20; *see Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 184 (6th Cir. 1992) *abrogated by Raymond B. Yates, M.D., P.C., Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004) (holding that employer did more than

simply purchase insurance and advise employees of its availability because it paid premiums for the employees).  And the plan expressly refers to "ERISA" rights—evidence of employer endorsement, according to the Sixth Circuit.  R. 1, Attach. 2 at 80; *Am. Home Assurance Co.*, 95 F.3d at 437; *see also Nicholas v. Standard Ins. Co.*, 48 F. App'x 557, 563 (6th Cir. 2002). Hence, this plan is not subject to the regulatory safe harbor from ERISA.

(2)  "Surrounding circumstances" also indicate that an ERISA plan exists.  *Am. Home Assurance Co.*, 95 F.3d at 437-38.  This requirement is met if a "reasonable person could ascertain the intended benefits, the class of beneficiaries, the sources of financing, and procedures for receiving benefits" from those surrounding circumstances.  *Id.* (internal quotation marks and citation omitted).  As the plaintiff (once more) does not dispute, at least three of these elements are apparent in the plan document.  For example, the plan identifies intended benefits in a section called "To Determine Your Benefit," R. 1, Attach. 2 at 39-42, which makes clear references to "disability" benefits and in another section discusses an "Income Recovery Benefit."  *Id.* at 44-45.  *Williams v. WCI Steel Co.*, 170 F.3d 598, 603-04 (6th Cir. 1999)).  Each section also identifies how the benefits are determined.  Next, the plan describes the class of beneficiaries in a section defining "Employee Coverage." R. 1, Attach. 2 at 30-31.  And the plan further outlines the procedures for securing benefits in a section called "Disability and Group Health Benefits Claims Procedure."  *Id.* at 83-87.  As for the source of financing:  Carter has not disputed Guardian's claim that the reference to insurance on the plan's Certificate of Coverage page evidences that an insurance policy was the source of funding.  *See*, R. 1, Attach. 2 at 3; *Tucker v. Cont'l Assurance Co.*, No. 05-345, 2006 WL 406591, at *2 (N.D. Okla. Feb. 17, 2006) ("The source of financing is the group life

insurance[.]"). Looking beyond that plan to the "surrounding circumstances," the text of Guardian's actual insurance policy reveals that the employer, Music-Carter, paid premiums to finance the plan, R. 14, Attach. 2 at 20—a fact seemingly acknowledged by the complaint's reference to premiums, R. 1, Attach. 1 at 4. So Music-Carter's plan also satisfied the second requirement in the Sixth Circuit's test.

(3)     Third, Music-Carter "established or maintained" this plan with the "intent of providing benefits to its employees." *Am. Home Assurance Co.*, 95 F.3d at 435. This requirement is met "very easily" with a showing that the employer "mere[ly] purchase[d]" a policy. *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1034 (6th Cir. 1993). And Music-Carter did precisely this. R. 1, Attach. 1 at 5 ("Music-Carter purchased the Policy from the Trust Fund.").

Yet Carter resists this conclusion, arguing that merely purchasing insurance does not "create" an ERISA plan. R. 15 at 7. If Carter meant only that a court must look beyond the mere purchase of insurance for evidence that a plan is an ERISA one, he would be right. That is what the Sixth Circuit held in *Fugarino*, 969 F.2d at 184 ("Moreover, the bare purchase of insurance, without any of the above elements present, does not constitute an ERISA plan, although it may be evidence of the existence of an ERISA plan."). And it is why the Sixth Circuit requires courts to also consider, as this Court did above, whether a reasonable person could "ascertain intended benefits, beneficiaries, source of financing, and procedures for receiving benefits" from the surrounding circumstances before finding that a plan is an ERISA one. *See Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)

(holding that courts should look to these pieces of evidence in addition to an employer's purchase of insurance).

But Carter means something more than that. He contends, despite the holding in *Libbey*, that the requirement that an employer "establish or maintain" a plan for the benefit of its employees obligates the employer to play a role in actually administering the plan in order for a plan to be subject to ERISA. R. 15 at 9. The problem for Carter is that the Sixth Circuit has repudiated precisely this argument. In *International Resources*, the court joined the Eleventh Circuit's rejection of the Fifth Circuit rule that employers must be involved in plan administration. 950 F.2d at 297 (citing *Donovan*, 688 F.2d at 1375); *see also Fugarino*, 969 F.2d at 185 (citing *Int'l Res.*, 950 F.2d at 297); *Robinson v. Linomaz*, 58 F.3d 365, 368 (8th Cir. 1995). What's more, Carter's proposed rule is hard to square with the recognized practice of employers delegating administration of ERISA plans to others—including a "multi-employer trust"[1] or an insurance company. *See Int'l Res.*, 950 F.2d at 296-98; *see also Estate of Thompson v. Sun Life Assurance Co. of Canada*, 354 F. App'x 183, 186-87 (5th Cir. 2009) ("Thompson's employer delegated administrative authority over its employee-benefit plan to defendant Sun Life Assurance Company[.]").

Carter's responses are unconvincing. He says first that the Supreme Court has emphasized the "administrative activity of the employer" in an ERISA case. R. 22 at 3 (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15-16 (1987)). Not only does that 1987 decision predate *International Resources*, which rejected Carter's view presumably

---

[1]     Carter seems to suggest that an employer cannot establish an ERISA plan by buying insurance through a MEW trust. R. 15 at 2. If he did intend this argument, *International Resources* says he is wrong. 950 F.2d at 296-98.

with *Coyne* in mind, but Carter's reading of the Supreme Court's decision goes too far. The Supreme Court did not even address the question of whether an employer must maintain a role in administering a plan for the plan to qualify under ERISA. Rather, it held simply that a state statute requiring "employers to provide a one-time severance payment to employees in the event of a plant closing" did not create an employee benefits plan, preempted by ERISA. The Supreme Court explained that the lack of any administrative apparatus (employer-run or otherwise) relating to the "one-time benefit" meant that there was no "plan" in the first place. 482 U.S. at 8-16. Carter next points to a Sixth Circuit holding that employers are the default plan administrators where no other administrator is named in the plan. R. 22 at 4 (citing *McDowell v. Krawchison*, 125 F.3d 954, 962 (6th Cir. 1997)). Yet this holding tacitly recognizes—contrary to Carter's position—that someone other than the employer can be named as administrator for the plan. Indeed, contrary to Carter's claim that the plan does not name an administrator, R. 22 at 2, the plan document specifies Guardian as the administrator. *See* R. 1, Attach. 2 at 82-90.[2]

Stepping back from the Sixth Circuit's three-factor test, Carter poses two more general, meritless objections to holding that this is an ERISA plan. First, with citations to two district court cases, he contends that the Court cannot conclude that his was an ERISA plan because Guardian has not supplied evidence that this plan conformed to mandatory ERISA requirements. R. 15 at 11-12 (citing *du Mortier v. Mass. Gen. Life Ins. Co.*, 805 F. Supp. 816, 820 (C.D. Cal. 1992) *and Jordan v. Reliable Life Ins. Co.*, 694 F. Supp. 822, 827

---

[2]     Carter also says, in passing, that Music-Carter, did not "create[] a written instrument" that established the plan. R. 22 at 2. The Court is unclear what he means by that, as there is a plan document in the record—with Music-Carter's name on it. R. 1, Attach. 2 at 1.

(N.D. Ala. 1988)). Without the requisite summary plan description ("SPD") or annual reports in the record, he elaborates, the Court cannot conclude that Guardian's plan is governed by ERISA. But—even setting aside Guardian's claim that the record actually *does* include a SPD, R. 1, Attach. 2 at 1—neither of the cases Carter cites held that existence of an SPD or annual reporting documents is determinative in deciding whether a plan is an ERISA plan. Indeed, the *Jordan* court found that a plan was not governed by ERISA because it did not include the required appellate procedures, not because of the absence of an SPD or reporting documents. 694 F. Supp. at 827. And the *du Mortier* court said that "failure to comply with ERISA's reporting and disclosure requirements does not remove a plan from ERISA coverage[;]" rather, it is simply evidence that helps decide whether a plan is governed by ERISA. 805 F. Supp. at 820. This is consistent with the Sixth Circuit's view, which is that the existence of an SPD is merely one piece of evidence that speaks to whether an employer has "endorsed" a plan so as to defeat the third requirement of the regulatory safe harbor from ERISA. *See Am. Home Assurance Co.*, 95 F.3d at 437; *see also B-T Dissolution, Inc. v. Provident Life & Accident Ins. Co.*, 101 F. Supp. 2d 930, 945 (S.D. Ohio 2000). And even if Carter is right that this ERISA plan does meet the third safe-harbor criterion because these documents are missing, his plan is still not eligible for the safe harbor because, as explained above, employee participation was not entirely voluntary.

Finally, Carter unpersuasively argues that ERISA cannot cover this plan because Music-Carter is not an "employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). First, it is very likely that a thirty-four employee car dealership in Prestonsburg, Kentucky—located near the nexus of three states—

is engaged in interstate commerce. Second, even if it is not, the Supreme Court has held that Congress's Commerce Clause power extends to activities that individually do not affect interstate commerce but are part of a "class of activities" that does. *Gonzales v. Raich*, 545 U.S. 1, 23 (2005). And ERISA takes advantage of this power, regulating employers insofar as they are participants in an "industry or activity affecting commerce." Here, it is *very* likely that Music-Carter, a car dealership, participates in an industry or activity affecting commerce. *Cf. Howell Chevrolet Co. v. Nat'l Labor Relations Board*, 346 U.S. 482, 484 (1953) (holding that car retailer subject to Commerce Clause because it was an "'integral part' of General Motors' national system of distribution."). At least, it is as likely to be a participant in such an industry or activity as a law firm. *See Reber v. Provident Life & Accident Ins. Co.*, 93 F. Supp. 2d 995, 1009 (S.D. Ind. 2000) ("There can be no doubt that the practice of law in the aggregate significantly affects commerce.").

**CONCLUSION**

Accordingly, it is **ORDERED** that the motion to remand, R. 7, is **DENIED**. Now that the Court has determined this is an ERISA case, the parties can disregard the order for meeting and report. The Court will file a scheduling order tailored for ERISA.

This the 18th day of May, 2011.



Signed By:

*Amul R. Thapar*

United States District Judge