UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| CHRISTOPHER N. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-3-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GUARDIAN LIFE INSURANCE | ) | **AND ORDER** |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Employee Retirement Income Security Act (ERISA) does not guarantee employees a comprehensive scheme of disability benefits. Rather, the Act sets minimal standards for how employers must administer their plans if they choose to establish one. So the particulars of the plan the employer selects determine whether an employee receives benefits, not the statute itself. Hence, a plaintiff's ERISA claim "stands or falls by 'the terms of the plan.'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1132(a)(1)(B)).

Here, the plaintiff's claim falls. The plan required him to present "[m]edical evidence" establishing that his physical limits prevented him from working "on the date [he] first became *disabled*." Admin. Tr. 363 [hereafter Tr.]; R. 56-1 at 8. He did not. Consequently, the Court must deny the plaintiff's motion for judgment overturning the administrative decision, R. 56.

## BACKGROUND

Christopher Carter sold cars for more than twenty years. He started as a junior salesman and worked his way up to become co-owner of the Music–Carter, Inc. car dealership. R. 56-1 at 3, 9. Carter's success is all the more admirable given that he battled constant back problems from early on in his career. *Id.* But eventually, after three major back surgeries and a host of alternative treatments, the pain became too much. *Id.* at 3–5. Carter stopped working on September 30, 2008, *id.* at 15, and filed for disability in November of 2008 under the disability insurance policy that Music–Carter purchased from Guardian Life Insurance Company. *Id.* at 1, 5.

The disability policy's Proof of Loss provision required Carter to submit evidence regarding both the timing and the nature of his injury. The policy states:

> Proof of loss must be given to us . . . We require the items listed below as proof of loss: [] Medical evidence in support of the limits on your ability to perform your *own occupation*, starting on the date you first became *disabled*. This proof is required from all *doctors* who have treated you for the cause of your *disability*.

Tr. 363. Carter stopped working on September 30, 2008, *see* R. 56-1 at 13 n.4, but he did not visit a doctor until October 29, 2008, *see* Tr. 224, 270. Though the plan's terms did not specifically require him to visit a doctor on the date he became disabled, it did require him to verify the date on which his physical limitations reached "disabled" status. The plan codified that duty in at least two places. First, the Attending Physician Statements that Carter had to submit in support of his Proof of Loss, Tr. 336, specifically asked for the dates when his symptoms appeared and when the doctor placed him on off-work status, Tr. 217–18 (Questions 5, 18). Second, the Proof of Loss provisions generally required medical evidence "in support of the limits on [Carter's] ability" on the date he claimed disability. Tr. 363.

2

Neither the Statements from Carter's doctors nor any of the medical evidence Carter submitted identified the date when his physical limitations crossed the threshold into disability. *See* Tr. 167, 237. Guardian sent three letters to Carter over approximately three months advising him that he had not fulfilled his responsibility to submit a "fully completed Attending Physician's Statement" along with "medical records [] from the onset of [his] disability through the present." Tr. 247 (Dec.), 215 (Feb.), 213 (March). But none of the evidence Carter submitted from his doctors indicated when his physical limitations began.

Guardian denied Carter's claim, citing, among other things, the fact that Carter had not met the requirements in the policy's Proof of Loss provisions. Tr. 159 ("We have reviewed your claim and have determined that we are unable to approve benefits because we have not received your initial proof of 'disability'."). Guardian's denial detailed its attempts to verify when Carter became disabled, including: three requests for "full completed Attending Physician Statement[s]"; a phone conversation with Carter on May 6, 2009; contact with the offices of both of Carter's doctors, Dr. Delomas and Dr. Holt; review of the records the doctors submitted; and a conversation with Carter on May 15, 2009. Tr. 159–60. The denial then identified the flaw in Carter's submission. *See* Tr. 160 ("As we have not received documentation of medical treatment to support your inability to perform your occupation as of the date your coverage ended, no benefits are available."). Carter appealed their decision, and Guardian upheld its denial, concluding that it had "not been provided with sufficient medical proof of total disability that existed as of [Carter's] last date worked." Tr. 30.

Carter then sued Guardian in state court, asserting several state-law claims. R. 1-1 at 10–12. Guardian removed the case to federal court. R. 1. Carter filed a motion to remand to

state court, R. 7, which the Court denied on the grounds that ERISA governs Guardian's policy and preempts Carter's state-law claims, R. 24 at 1, 9.  After some wrangling over discovery, Carter filed his motion for judgment overturning the administrative decision, R. 56.  That motion included an attached exhibit summarizing the facts that Guardian failed to consider in its decision or omitted from the record entirely.  *See* R. 56-2.  In its response, Guardian moved to strike that exhibit, arguing that it was an attempt to bypass the Court's page limits on motions.  *See* R. 60.  The Court granted the motion and struck the exhibit from the record but ordered supplemental briefing as to whether any documents identified in the exhibit were improperly omitted from the administrative record.  *See* R. 65.  However, the Court need not decide whether the records at issue were improperly omitted because none of them speak to the dispositive issue: the date when Carter's disability began.  *See* R. 67-1 (not listing such evidence among the disputed records).

## DISCUSSION

The terms of Carter's disability plan dictate whether he is eligible for benefits.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003).  The Court reviews Guardian's application of those terms under an arbitrary and capricious standard of review.  R. 53 (setting arbitrary and capricious review as the standard of review for the parties' motions for judgment); *see also Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342–43 (6th Cir. 2011).  That standard requires the Court to uphold the administrator's decision if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

Carter's disability plan was, in effect, a contract. It struck an agreement between Carter and Guardian that required Guardian to pay disability benefits if Carter met certain conditions. One of those conditions was that Carter submit a proper Proof of Loss to Guardian. The plan's Proof of Loss provisions required Carter to provide medical evidence showing his physical limitations at the time he first became disabled. *See* Tr. 336, 363. Carter failed to do so. And under the plan, no medical evidence meant Guardian had no obligation to pay benefits. *Id.* Conditioning disability benefits on such evidence makes sense. Otherwise, there is no proof that: (1) Carter was "disabled" on the date he began seeking benefits; or (2) he was still covered by the plan when he became disabled. Guardian cited that omission when denying Carter's claim. *See* Tr. 21, 159–63. And Guardian applied that same logic when denying Carter's appeal. Tr. 30 ("[W]e have not been provided with sufficient medical proof of total disability that existed as of your last date worked . . . ."). Guardian's denial of Carter's claim thus followed the plan's terms and reflected the evidence before it, or in this case, the lack of evidence before it. The decision was therefore neither arbitrary nor capricious.

Carter's arguments to the contrary are unpersuasive. First, Carter argues that Guardian's decision effectively rewrote the policy by requiring proof that Carter's doctors had "advised [him] to cease work." R. 64 at 2 (quoting Tr. 159). His argument ignores the fact that the policy's mandates incorporated the Attending Physician Statement. The plan's General Provisions required Carter to fill out the "forms for filing proof of loss" that Guardian furnished him with. Tr. 336; *see also* Tr. 218. And the Statement form that Guardian sent Carter required him to answer the question of whether his doctors placed him on "off work status." Tr. 218 (Questions 17, 18). Carter's doctors did not advise him that he

5

could not work; thus, Carter did not provide the specific "[m]edical evidence in support of the limits on [his] ability" that Guardian requested.  Tr. 363.  Also, there was more to Guardian's decision than the fact that Carter's doctors did not place him on off-work status.  The thrust of Guardian's reasoning was that Carter did not provide medical evidence that he qualified as "disabled" when he ceased work on September 30, 2008.  Tr. 30 (fifth paragraph), 160 (third paragraph).  That justification squarely falls under the policy's Proof of Loss provision, Tr. 363.  Thus, it was neither arbitrary nor capricious.  *See Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) ("An ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.'" (quotation omitted)); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381–82 (6th Cir. 1996) (upholding denial where administrator denied benefits based on plaintiff's failure to meet plan's requirement that she submit "satisfactory proof that she could not perform the material duties of her regular occupation"); *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 443 (6th Cir. 2005) (upholding denial where administrator based termination of benefits on plaintiff's failure to follow plan's requirement that she attend monthly doctor appointments and therapy session).

Second, Carter emphasizes that Guardian failed to consider the Social Security Administration's decision deeming him disabled and that defense counsel failed to rebut many of his arguments.  R. 64 at 11–14.  But these points are relevant only if Carter has satisfied the threshold Proof of Loss requirements.  *See* Tr. 336 (making proper proof of loss a necessary precondition to benefits).  And he did not meet that threshold.  *See Pflaum v. UNUM Provident Corp.*, 175 F. App'x 7, 11 (6th Cir. 2006) (upholding denial of benefits where the plan required the plaintiff to "provide satisfactory written proof of loss" and

6

plaintiff did not do so); *cf. Garst v. Wal-Mart Stores, Inc.*, 30 F. App'x 585, 590-91 (6th Cir. 2002) (upholding administrator's decision to withhold benefits where plaintiffs failed to comply with plan's requirement that they apply for Social Security disability benefits to receive benefits).

## CONCLUSION

There is no doubt that Mr. Carter is sincere, often heartrendingly so, when he insists that his condition has forced him to stop working, *see, e.g.*, Tr. 153–54. But there is also no doubt that he failed to comply with the terms of his disability insurance plan. And in an ERISA case, a plaintiff's claim "stands or falls" on the terms of the deal he struck. *See Kennedy*, 555 U.S. at 300. Therefore, it is **ORDERED** as follows:

(1) The defendant's administrative decision denying the plaintiff's application for disability insurance benefits is **AFFIRMED**.

(2) The plaintiff's motion for judgment overturning the administrative decision, R. 56, is **DENIED**.

(3) This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

(4) Judgment in favor of the defendant shall be entered contemporaneously with this Memorandum Opinion and Order.

This the 9th day of October, 2012.



Signed By:
*Amul R. Thapar* AT
United States District Judge